
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PARKS FOUNDATION, | No.   16-72572 |
| Petitioner-Appellant, | Tax Ct. No. 7093-07 |
| v. | |
| COMMISSIONER OF INTERNAL REVENUE, | MEMORANDUM* |
| Respondent-Appellee. | |

| | |
|---|---|
| LOREN E. PARKS, | No.   16-73236 |
| Petitioner-Appellant, | Tax Ct. No. 7043-07 |
| v. | |
| COMMISSIONER OF INTERNAL REVENUE, | |
| Respondent-Appellee. | |

Appeal from a Decision of the
United States Tax Court

Argued and Submitted November 13, 2017

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

William S. Boyd School of Law
University of Nevada, Las Vegas
Las Vegas, Nevada

Before: RAWLINSON and BYBEE, Circuit Judges, and MENDOZA,[**] District Judge.

Petitioners-Appellants Parks Foundation (Foundation) and Foundation's manager Loren E. Parks (Parks) appeal the decision of the United States Tax Court finding that expenditures made by Foundation for the production and broadcast of nine radio advertisements were taxable events.

When an otherwise tax-exempt private foundation operates beyond the purposes enumerated in 26 U.S.C. § 501(c)(3), the tax code provides for an excise tax on non-exempt expenditures. *See* 26 U.S.C. § 4945(a), (d)(5).[1]

As relevant to this appeal, taxable expenditures include: "any amount paid . . . to carry on propaganda, or otherwise to attempt, to influence legislation," unless "making available the results of nonpartisan analysis, study, or research," § 4945(d)(1) and (e); or "for any purpose other than one specified in section 170(c)(2)(B)." § 4945(d)(5). Section 170(c)(2)(B) concerns expenditures for "religious, charitable, scientific, literary, or educational purposes . . ." §

---

[**] The Honorable Salvador Mendoza, Jr., United States District Judge for the Eastern District of Washington, sitting by designation.

[1] All further references are to Chapter 26 of the United States Code.

170(c)(2)(B). To determine whether the advocacy of a particular viewpoint serves an educational purpose, the Internal Revenue Service "will [l]ook to the method used by the organization to develop and present its views" (the Methodology Test). Rev. Proc. 86-43, Sec. 3.02, 1986-2 C.B. 729 (1986), 1986 WL 297205. Specifically, the I.R.S. will consider whether: the positions advocated are unsupported by facts; the supporting facts presented are distorted; the presentation uses "inflammatory and disparaging terms and express[es] conclusions more on the basis of strong emotional feelings than of objective evaluations"; and the presentation does not consider the background of the audience to better develop listeners' understanding of the subject matter. *Id.* Sec. 3.03.

The Tax Court did not err in rejecting the communications at issue as non-educational[2] for purposes of § 4945(d)(5). Each communication funded by Foundation reflected in varying degrees the factors contemplated by the Methodology Test as indicative of non-educational advocacy.[3]

---

[2] Parks and Foundation advance the expenditures as exempt only for "educational" purposes.

[3] Parks and Foundation challenge the constitutionality of the Methodology Test. However, because this claim was not raised before the Tax Court, we decline to address it on appeal. *See Cold Mountain v. Garber*, 375 F.3d 884, 891 (9th Cir. 2004), *as amended* ("In general, we do not consider an issue raised for the first time on appeal. . . .") (citation omitted).

As noted by the Tax Court, communications from the Foundation distorted the facts presented to the public or omitted supporting facts entirely. Many of the communications also used inflammatory or disparaging terms seemingly directed at producing an emotional response to the messages' content, rather than promoting an objective assessment of issues of public concern. Applying the Methodology Test to the communications, the Tax Court properly determined that Foundation's expenditures to produce and broadcast the messages were not for "educational" purposes.[4]

Further, the Tax Court did not err in determining that Parks incurred tax liability in his capacity as Foundation's manager because he approved the nonexempt expenditures. Parks stipulated before the Tax Court that if Foundation incurred liability for excise taxes under § 4945(a)(1), Parks would be personally liable for excise taxes under § 4945(a)(2), unless he could establish that he relied on the advice of counsel when making the expenditures. "If a foundation manager, after full disclosure of the factual situation to legal counsel . . . , relies on the advice of such counsel expressed in a reasoned written legal opinion that an

---

[4] Because the expenditures were not made for a purpose enumerated in § 170(c)(2)(B), we need not consider whether the communications also constituted attempts to influence legislation under § 4945(d)(1).

4

expenditure is not a taxable expenditure under section 4945," the manager will not incur liability for approving the expenditure. 26 C.F.R. § 53.4945-1(a)(2)(vi).

Foundation's tax counsel provided written responses regarding only three of the proposed communications. Counsel supplied cursory commentary, without addressing his opinion "to the facts and applicable law." *Id.* Because counsel's messages did "nothing more than . . . express a conclusion," the legal opinion was not "reasoned" within the meaning of the regulation. *Id.* We therefore agree with the Tax Court and hold that Parks failed to demonstrate that he reasonably relied on the advice of counsel as contemplated in the governing regulation. Accordingly, the Tax Court properly assessed tax liability pursuant to § 4945(a)(2).

**AFFIRMED.**

*Parks Foundation v. CIR*, No. 16-72572+

BYBEE, Circuit Judge, concurring:

I join the Memorandum Disposition in full and write separately only to question whether the Methodology Test is well adapted to the context of assessing excise taxes under 26 U.S.C. § 4945(d)(5). The Test was originally designed to supplement and remedy the regulatory definition of "educational," which had been found unconstitutionally vague. *See Nat'l Alliance v. United States*, 710 F.2d 868, 870–71 (D.C. Cir. 1983); *Big Mama Rag, Inc. v. United States*, 631 F.2d 1030, 1039–40 (D.C. Cir. 1980). In that context it was used as a means to determine whether tax-exempt status should be granted in the first instance, by surveying the methods used throughout the entire body of an organization's communications, not as a means to identify specific noneducational expenditures for the purpose of assessing excise taxes. This is an easy case, as there is nothing remotely educational about the method, content, form, or function of these communications, and because appellants' arguments about the Test's constitutionality and application have been forfeited. But the Methodology Test may someday require a closer look.